**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW MCCLAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Andrew McClain, by and through his attorneys, Mbanza Law, PLLC, and for his action against the Defendant, Costco Wholesale Corporation, Herenafter, known as Costco, states as follows:

1. Costco Wholesale Corporation (Defendant) is a multinational corporation that provides members with quality goods, and services at low prices.
2. The Corporation has 22 chains in Illinois
3. Andrew McClain (Plaintiff) is a resident of Oswego, Illinois
4. On or about May 2019, Andrew McClain was employed as a Sales Associate for the Defendant's Bolingbrook branch.
5. The Plaintiff was tasked to sell: merchandise, major appliances, jewelry, electronics; in addition to, answering questions, exhibit merchandise; stock and uphold products.
6. Through the duration of his employment, the Plaintiff performed and completed his duties and responsibilities that were expected from him as a Sales Associate.
7. Throughout the Plaintiff's employment the Plaintiff was subjected to racial biases, prejudice, harassment, and hostility from his Costco's superiors.
8. The Plaintiff on numerous occasions voiced his concerns about discriminatory practices to Costco's upper management
9. The Plaintiff shared a complaint to the Defendant's Vice President Wendy Davis, about his racial experiences at the Bolingbrook branch.
10. In the interest of deescalation, the Plaintiff voluntarily transferred to a different location
11. The Defendants at no time reprimanded or stopped racial harassment at the Bolingbrook branch
12. The Plaintiff had suffered from discrimination, hostile work environment, and retaliatory practices . Plaintiff brings this cause of action to vindicate his rights.

## JURISDICTION AND VENUE

13. Plaintiff's claims arise under title VII of Civil Rights of 1964, Illinois Human Rights Act (IHRA 775 ILCS 5/1 *et seq.*; and common law.

14. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C 1367.

15. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C 1391(b). Defendant is located in this District and maintains its store in this District, where the unlawful conduct alleged in this complaint occurred in this District.

## PARTIES

16. Defendant is a Costco Wholesale, located in Bolingbrook Illinois. Costco Wholesale is a subsidiary of Costco Wholesale Corporation, and is located in Bolingbrook, Illinois. Costco Wholesale Corporation is an American multinational corporation which operates a chain of membership-only big-box retail stores.

17. Plaintiff McClain resides in Oswego, Illinois. Plaintiff is a 29 year-old African American man who has been a victim of discriminatory conducts of the Defendant.

## FACTUAL ALLEGATIONS

18. On or About May 2019, Plaintiff was employed as a Sales Associate for Costco Wholesale Corporation (Defendant) located in Bolingbrook, Illinois.

19. The Plaintiff would report to Steve Fcatek, a general manager at Costco.

20. Soon after the Plaintiff was hired, he began to experience incidents of hostile work place environment, harassment, racial profiling, and humiliation.

21. On one occasion, a supervisor, Barry MC Glynn, publicly called the Plaintiff an idiot.

22. The Plaintiff was subjected to numerous incidents from his direct Superiors where he was directly asked to quit, or threatened to be fired.

23. The Plaintiff reported these incidents and altercations to the store's internal management.

24. The Plaintiff was advised by management to report these incidents to corporate.

25. In beginning of September 2019, the Plaintiff complained to corporate of racial harassment resulting in a temporary halt to future harassment.

26. On September 15, 2019 the Plaintiff while working, glanced at a TV screen to check a football game score. Tanner, a Supervisor, angrily told the Plaintiff, *"This isn't your house, you're not here to watch football...go block down the fence now."* Plantiff requested Tanner to lower his tone and if he did so only then the Plaintiff would comply. Tanner responded by yelling, "*What are you going to do, fucking punch me in the face, I am not scared of you."* The incident was witnessed by other employees.

27. September 22, 2019, Manager Terri and Supervisor Tanner invited the Plaintiff to the management office for a coaching meeting. During the meeting, Terri told Plaintiff," *You are a bad person*".

28. Around November 2021, Kyle Barna, a coworker, whispered to the Plaintiff, *"What's up nigger"*. The Plaintiff responded to Kyle,"*If I hear you say something like that again we're going to have a problem*." On a separate occasion, Kyle accused the Plaintiff of stealing his remote control. When

asked by the Plaintiff about his reasoning, Kyle responded, "*Because you are black, all black people steal, nigger.*"

29. The Plaintiff reported Kyle's derogatory statements to Steve, a store general manager, Steve promised the Plaintiff that he would take appropriate action regarding the incidents with Kyle.

30. When the Plaintiff followed up regarding the incidents, Steve stated that Kyle denied calling the Plaintiff a nigger. The Plaintiff told Steve that he had a voice message from Kyle apologizing for calling him a nigger. He offered to play it for Steve. Steve responded,"*We don't need to hear that.*"

31. The plaintiff was never interviewed by his supervisors or by the human resource department about the incident.

32. On May 8 2020, Plaintiff and Kevin, a coworker, were standing by a jewelry kiosk in the store. Plaintiff informed Kevin that Plaintiff is to take his 15 minute break. Manager Will, walked toward them and abruptly asked, "*Are you on the clock?*," Plaintiff replied, "*I'm going on my 15 minute break.*" Will said, "*Get out of here, get out of Kevin's face you're distracting him.*" Plaintiff explained,"*I'm just letting him know I'm going on a break.*" Will, yelled again," *Get out of Here.*" At this point the Plaintiff asked Will, whether the employee handbook prohibits employees from interacting with each other. Will replied it probably does. Shortly after, Will approached Plaintiff in the breakroom. Will angrily hit the Plaintiff with a Costco Employee Handbook that he was holding in his hands, and said, "*See it says it right there!*"

33. On June 17, 2020 Steve approached  the Plaintiff and asked whether Plaintiff had already completed paperwork to transfer to Plainfield Costco store branch. Plaintiff did not disclose his intent to transfer with anyone.  Steve added," *I am trying to get rid of you.*"

34. These instances of verbal abuse have caused severe mental anguish and embarrassment to Plaintiff at work.

35. Coworkers saw the Plaintiff being mishandled and mistreated.

36.   *On one occasion the Plaintiff and a fellow coworker were speaking in the major sales Manager* "Alex Rodriguez" *singled out the Andrew Plaintiff, and summoned him to his office where the Plaintiff was given a coaching.*

37.   On a separate occasion Plaintiff   *was chewing gum and Manager "Michael Vanadia" approached and demanded Plaintiff spit it out immediately. Michael said, "You know how to read Drew? It's in the handbook no gum on the sales floor."*

38. In another situation where assistant general manager Barry Mcglynn**,** asked Plaintiff to look up something in the AS400 (Costco's database). The Plaintiff told Barry that he did not know how. Barry replied, "*Are you freaking serious? Do you know how to do anything?*"

39. Finally,   *Managers and Supervisors tried to blame Plaintiff  for the 'idle chatter" in the department even when others were equally talking. But yet, they always named the Plaintiff.*"

40. Plaintiff become scared, anxious, and uncomfortable coming to work because he did not what was going to happen to him on any day. The Plaintiff was mentally drained at work and at home. His mother, sister, and girlfriend tried to uplift him as best as they could. Defendent's conduct took a mental tool on Plaintiff's family as well.

41. Plaintiff sought counseling from church leader in order to address the anguish caused him by

Defendant.

42. Several other coworkers have shared harassment, racial profiling, intimidation, and humiliation at the Defendant's branch.

43. Because of the Defendants' unlawful treatment, Plaintiff has suffered significant emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, and inconvenience, and other non-pecuniary losses.

## COUNT I
## RACIAL DISCRMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS OF ACT OF 1964

44. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this complaint.

45. Under Title VII, Defendant, an employer, committed unlawful employment practice. It discriminated against Plaintiff with respect to conditions or privileges of employment because of Plaintiff's race, color, and national origin.

46. Plaintiff is black, and he was consistently harassed and disciplined more harshly than other employees on account of his race.

47. Defendant condoned abusive language and racial slur to be continually used against Plaintiff when it failed to redress or investigate the times that Kyle called Plaintiff a nigger.

48. Defendant's conduct against Plaintiff was purposeful and denied Plaintiff equal protection under the law when neither the supervisors, managers or the human resources department investigated Plaintiff's complaints about being called a nigger twice by a co-worker. (Batson v. Kentucky, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986).

49. Defendant allowed Kyle to demean Plaintiff on the basis of his race when Defendant failed to address Kyle's statement: "all black people steal."

50. The Defendant treated Plaintiff differently than they treated other employees. They did this on purpose with the intent to harass and force him to quit his job.

51. Steve, one of the managers, told Plaintiff to transfer to a different store.

52. Plaintiff was often called into the office and disciplined for situations that other employees were not disciplined for.

53. Defendant violated Plaintiff's rights to be free from discrimination based on his race.

54. Plaintiff has suffered significant emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, and inconvenience, and other non-pecuniary losses.

## COUNT II
## HOSTILE WORKPLACE ENVIRONEMNT

55. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this complaint.

56. Objectively, these instances of verbal abuse, physical assault, intimidation, racial profiling caused severe mental anguish and embarrassment to Plaintiff at work. They were unwelcome, pervasive,

and they occurred because Plaintiff is black.

57.  Costco employees have witnessed how Costco managers and supervisors treated Plaintiff while at work.

58. Plaintiff felt intimidated, mentally and physically abused.

59. Defendant violated Plaintiff's rights to be free from discrimination based on his race.

60. Plaintiff has suffered significant emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, and inconvenience, and other non-pecuniary losses.

## COUNT III
### BREACH OF THE DUTY OF FIDUCIARY TO INVESTIGATE HARASSMENT

61. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this complaint.

62. The Defendant failed its affirmative duty to investigate Plaintiff's complaints regarding his racial profiling or workplace environment hostility complaints.

63. Defendant did not take remedial action to address Plaintiff's concerns.

64. Defendant failed this duty in violation of its employee handbook, code of conduct, and mission statement.

65. Defendant's records do not indicate that Defendant interviewed Plaintiff or asked any of the following questions: when and where the incident occurred; what was said, or done by parties, whether there were any witnesses, the effect of the incident; failed to review the voice message that Kyle left on Plaintiff phone.

66. Defendant's records do not indicate Defendant interviewed Kyle and advised Kyle that his comments to Plaintiff were unwelcome.

67. Plaintiff was aggrieved by the actions of his supervisors, managers, and Kyle.

68. Defendant violated Plaintiff's rights to be free from discrimination based on his race.

69. Plaintiff has suffered significant emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, and inconvenience, and other non-pecuniary losses..

## COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this complaint.

71. Defendant's failure to remedy the unlawful actions of verbal and physical attacks by its employees and supervisors caused emotional distress to Plaintiff.

72. Intentional Infliction of Emotional Distress is sustained when "(1) The defendant conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct". Johnson v. K Mart Corp., 723 N.E.2d 1192, 311 Ill. App. 3d 573, 243 Ill. Dec. 591 (Ill. App. 2000).

73. Throughout Plaintiff's employment, Defendant's management singled out, targeted Plaintiff, and failed to prevent other employees from harassing Plaintiff or calling him a nigger.

74. Management was well aware of all these incidents by way of verbal and written complaints but failed to address any of them.

75. Defendant violated Plaintiff's rights to be free from discrimination based on his race.

76. Plaintiff has suffered significant emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, and inconvenience, and other non-pecuniary losses..

## COUNT V

## RACIAL DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

77. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this complaint.

78. The Illinois Human Rights Act, 775 ILCS 5/1-101, et seq., makes it unlawful for any employer to engage in harassment... or to act with respect to discipline...on the basis of unlawful discrimination...775 ILCS 5/2-102(a). " Unlawful discrimination includes discrimination based on race, color, national origin, or ancestry. (775 ILCS 5/1103(Q).

79. Defendant singled and targeted Plaintiff. Defendant disciplined Plaintiff more than any other employees for situations that other employees would not be disciplined for.

80. When he was accused of talking to other employees, only he was disciplined and not other employees.

81. Defendant violated Plaintiff's rights to be free from discrimination based on his race.

82. Plaintiff has suffered significant emotional and mental distress, embarrassment and humiliation, loss of enjoyment of life, and inconvenience, and other non-pecuniary losses.

**WHEREFORE,** Plaintiff requests the entry of judgment in his favor, and against the Defendant as follows:

    a.  Declare that the acts and conduct of Defendant are unlawful and violate the Civil Rights Act, the Illinois Hunan Rights Act, and the common law;

    b.  Award Plaintiff compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses in the amount of $250,000.00;

    c.  Award Plaintiff prejudgment interest;

    d.  Award Plaintiff punitive damages un IHRA;

    e.  Award Plaintiff attorneys' fees and costs; and

    f.  Award Plantiff such other make-whole equitable, injunctive, and legal relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

Respectfully submitted,

**MBANZA LAW, PLLC.**

800 Roosevelt Rd, Suite B116        _/s/Mayombo Mbanza_

Glenn Ellyn, IL 60137        MAYOMBO A MBANZA

       One of the Plaintiff's Attorneys

PO. Box 21,

Lansing, IL 60438

P: (872) 205-6770 | P: (312) 685-1198

F: (872) 228-8176

case@mbanzalaw.com

## CERTIFICATION

The undersigned Attorney certifies that pursuant to rule 11, the statements provided in this complaint are true and correct according to his knowledge and belief; that they are not presented with for any improper purpose," such as harassment, delay, or an unnecessary increase in cost; that they are "warranted by existing law, and they are supported by evidence.

       _/s/Mayombo Mbanza_

       MAYOMBO A MBANZA

       One of the Plaintiff's Attorneys