## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANDREW MCCLAIN,                          )
                                         )
              Plaintiff,               )
                                         )
           v.                         )       21 C 5355
                                         )
COSTCO WHOLESALE CORPORATION,            )
                                         )
             Defendant.               )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Andrew McClain brought this action against his employer, Costco Wholesale Corporation ("Costco"), alleging unlawful racial discrimination and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*[1]  Before the Court is Costco's motion for summary judgment in its favor on all remaining claims.  For the reasons set forth below, Costco's motion is granted.

---

[1] McClain's state law breach of fiduciary duty and intentional infliction of emotional distress claims (Counts III and IV) were dismissed at the motion to dismiss phase.  *See* Dkt. # 17.  In his response to Costco's motion for summary judgment, McClain also voluntarily dismissed his Title VII race discrimination claim (Count I).  *See* Dkt. # 37, at 3.  While in his complaint McClain framed his IHRA claim (Count V) as a race discrimination claim, he now argues that Count V is a hostile work environment claim.  Because McClain incorporates all his allegations supporting a hostile work environment claims into Count V, the Court treats Count V as a hostile work environment claim under the IHRA.

## BACKGROUND

As a preliminary matter, the parties did not bother to include a statement of material facts section in their briefs, electing instead to leave it to the Court to sift through the parties' Local Rule 56.1 statements and the underlying exhibits to determine the factual background and sequence of relevant events. The briefs submitted by both parties assume the Court is as familiar with the underlying events as the authors, jumping straight into legal argument without providing sufficient background information. Courts in this district have repeatedly informed litigants that a Local Rule 56.1 statement is not a substitute for a statement of facts section contained in the supporting brief. *See*, *e.g.*, *Flakes v. Target Corp.*, 2019 WL 6893005, at *2 (N.D. Ill. 2019); *FirstMerit Bank, N.A. v. 20000 N. Ashland, LLC*, 2014 WL 60605817, at *4 (N.D. Ill. 2014); *Duchossois Indus., Inc. v. Crawford & Co.*, 2001 WL 59031, at *1 (N.D. Ill. 2001) ("Counsel obviously fail to understand the purpose of L.R. 56. L.R. 56.1 statements are not intended to be substitutes for a statement of facts section of a memorandum of law. Rather, their purpose is to assist the court in identifying those material, uncontested facts in the record that entitle the movant to judgment.").

Moreover, omitting complete factual recitations in the parties' briefs constitutes an impermissible and transparent attempt to avoid the page limitations prescribed by Local Rule 7.1, and places an undue burden on the Court and its staff. *Cleveland v. Prairie State Coll.*, 208 F. Supp. 2d 967, 973 (N.D. Ill. 2002). If either party felt they could not adequately present their arguments within 15 pages, the proper course of

action would have been to file a motion seeking leave to file a brief in excess of the page limitation (which likely would have been granted). The Court is confident the parties will heed the Court's admonishment in the future.

That being said, we turn to the factual background. In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.[2]

McClain, who is Black, first began his employment with Costco in 2017 at the company's Bolingbrook, Illinois warehouse. After voluntarily resigning his employment months later, he reapplied and was rehired at the same warehouse in May 2019. He has maintained his employment with Costco since that date and is currently employed as a Loss Prevention Specialist at Costco's Plainfield, Illinois warehouse.

At all times relevant to the allegations in his complaint, McClain was a Major Sales Associate at the Bolingbrook location. Major Sales Associates are required to assist Costco members while shopping for electronics, jewelry, and major appliances by answering questions they may have. They are also responsible for making the major sales area look presentable by tidying and organizing the area.

---

[2] Any asserted facts or factual disputes that were not supported by evidence or were immaterial or otherwise inadmissible have not been included.

Costco's Employee Agreement—which operates as the Company's handbook—states that it is "Costco's policy that employees should be able to enjoy a work environment free from all forms of unlawful employment discrimination, harassment, and retaliation." Dkt. # 36-12, at 2. It specifically prohibits unlawful discrimination based on race (among other protected categories). The Employment Agreement also contains an anti-harassment policy, which states it is Costco's intent to provide a harassment-free environment for all.

The Employment Agreement further states that Costco employees are required to report harassment and discrimination to a manager-level employee or above or go to Costco's Ethicspoint site to submit a written complaint. The requirement to report applies to harassment or discrimination that is caused by anyone in the warehouse including managers, supervisors, co-workers, members, independent contractors, suppliers, or others. The policy also provides that Costco will investigate "all reported incidents in a manner determined most appropriate based on the circumstances," and will take appropriate corrective action as necessary. Dkt. # 36-12, at 2, 5.

Costco uses a document called an "Employee Counseling Notice" ("Counseling Notice"), which is a form of employee discipline. It is a formal, written notice that is placed into employees' personnel files. Costco managers separately maintain what are known as "coaching" or "performance" logs for employees at each warehouse. Coaching logs are designed to provide feedback to employees—whether positive or negative. They are intended to memorialize areas in which a particular employee can

show improvement and to track the employee's progress in those areas.  The coaching logs are kept in management's office and are not placed in employees' personnel files.  Coaching log entries do not rise to the level of Counseling Notices, and Costco does not consider these entries to be discipline.

At the time he filed this lawsuit, McClain only had one Counseling Notice in his personnel file.  That notice was dated August 26, 2017, and was permanently included in his personnel file due to the nature of the infraction.  McClain did not receive any discipline for major violations of Costco policy during his second stint at the Bolingbrook warehouse.

There were also three coaching log entries for McClain, two of which noted that McClain needed to cut down on idle chatter with coworkers and others.  McClain testified he was falsely accused of idle chatter when in fact he was letting other Costco employees know he was going on break—something Costco admits would not qualify as idle chatter.

On September 23, 2019, McClain called in a complaint to Costco's human resources ("HR") department.  In it, he complained that he was being "harassed" and "picked on" by one of his supervisors, Tanner Rife.  Specifically, McClain complained about an incident that happened days earlier where he was watching football on the TVs in the Major Sales Department, and Rife "yelled" at him to get to work.  Dkt. # 38, ¶ 23. McClain replied that Rife needed to "lower [his] tone."  *Id.*  The two argued with each

other, including Rife replying, "What are you gonna do? Are you gonna f***ing punch me? Are you gonna call your mom on me?" *Id.*

McClain further complained about Rife's treatment of him generally, "picking on" him by telling him he may get fired if he does not improve his performance and making fun of him for living at home with his mom. McClain did not mention race at any point during the call. And by complaining he was "harassed," McClain meant that Rife was "yell[ing]" at him and using "disrespectful words and tones." *Id.* ¶ 24.

HR emailed Bolingbrook warehouse General Manager Steve Ftacek and informed him of McClain's complaint about Rife. In turn, Ftacek called Rife in to investigate McClain's allegations. Rife admitted many of the details of the altercation. Ftacek admonished Rife for his behavior towards McClain and let him know it was unacceptable and exhibited poor leadership to speak to McClain in that manner. Ftacek then informed McClain that he had counseled Rife, and that McClain should let him know if there were further problems with the way Rife treated him. Even though Rife was McClain's supervisor, he did not have authority to take any significant employment action against McClain such as promotion, demotion, or reassignment. He could, however, recommend that such actions be taken. After Ftacek counseled Rife about his behavior, McClain did not complain to Costco about Rife again until August 2020.

In the same complaint to HR in September 2019, McClain stated that Hardlines Manager Terri Hadad called him a "bad person." McClain later clarified in August 2020—and at his deposition—that Hadad said she wanted him to be a "better person"

6

and quickly corrected herself to say, "better employee," which McClain interpreted to mean she was calling him a bad person.

Costco investigated the complaint about Hadad as soon as it was made aware. Despite her manager title, Hadad did not have authority to take tangible employment action against McClain—although she could recommend such actions be taken. After speaking with Hadad, Costco determined her use of "bad person" was a misunderstanding due to word choice; English is not Hadad's first language. Still, Ftacek counseled Hadad to be more careful with her words. Costco did not prepare any written documentation of McClain's complaint against Hadad or the subsequent investigation. This was the only incident involving Hadad that McClain complained about.

When questioned why McClain believed that Hadad's alleged use of the words "bad person" was based on his race, he testified, "I mean, because what would make you think that I'm a bad person, because I'm black? Why — you wouldn't say that to a white employee." Dkt. #38, ¶ 32.

McClain also complained about interactions with supervisor William He. Although He had a supervisor title, He did not have authority to independently take any tangible employment actions against McClain such as firing or demotion. One day, McClain was speaking with a coworker, informing them he was going on his break, when He scolded him to refrain from speaking to coworkers while on break. McClain challenged He, asking He to show him in the handbook where employees are prohibited

from speaking to coworkers while on break.  According to McClain, He approached him minutes later and "hit" him on the shoulder with the handbook, and then set it down in front of him to show him the relevant section of the handbook.  McClain was not physically injured by the contact.  McClain maintains that he was not doing anything wrong when he was scolded by He.  McClain also alleged He subsequently "grabbed" his shoulder when walking past him a week later.

McClain reported these interactions to Assistant General Manager Sarah Andrews.  Andrews called He into warehouse management's office and asked him about McClain's allegations.[3]  He admitted that he had tapped McClain on the shoulder with the handbook but denied "hitting" him.  Andrews counseled He that he should refrain from touching coworkers because it could be construed negatively, even if that was not his intent.  McClain admitted that He did not make any comments of a racial character to him, and when asked during his deposition how He's actions were based on his race, McClain replied, "I don't know."  Dkt. # 38, ¶ 37.  The two instances of physical contact were McClain's only complaints regarding He's conduct.  Costco does not have any written documentation related to McClain's complaints against He.

On another occasion, Assistant General Manager Barry McGlynn called McClain an "idiot" and said "are you freaking serious, do you know anything" after McClain demonstrated that he did not know how to look something up on Costco computer software.  *Id.* ¶ 39.  McClain claims he reported this to Ftacek, though Costco

---

[3] Andrews's declaration does not mention the "grabbing" incident.

testified it was not made aware of any complaints regarding McGlynn and has no record of any complaints regarding this interaction.

When asked why he believed McGlynn's alleged comments were based on race, McClain responded, "I mean, black people are seen as uneducated, dumb, stupid, whatever way you would like to put it[,] so if you're not saying that to a white person, why would you say it to me[.] I'm a black man so that made me feel like you're calling me stupid because I'm black because nobody else got [called] stupid or an idiot by [McGlynn]." Dkt. # 39, ¶ 40.

McClain also complains that he received coaching from Area Manager Alex Rodriguez on unspecified occasions for idle chatter; however, McClain only reported this alleged harassment to Rodriguez himself.

In or around March 2020, Merchandise Manager Michael Vanadia asked McClain to stop chewing gum and said something to the effect of, "Don't you know how to read? No gum on the sales floor[,]" in reference to the employee handbook. Dkt. # 38, ¶ 42. When asked why he believed Vanadia's alleged comments were based on race, McClain stated, "He asked me could I read, first of all, and I feel like I said before, that's just like I said black people are categorized as uneducated or stupid or dumb or whatever words you can think of. So I feel like that was racist[.] [C]an I read? Of course I can." Dkt. # 39-1, at 71. This was McClain's only issue with Vanadia.

McClain believes he received an above average amount of coaching and discipline when compared to other Costco employees. With regard to the incident with

Rife, McClain was required to attend additional Costco non-violence workplace training and Rife was not.

Kyle Barna, a DirecTV employee assigned to the Bolingbrook warehouse, worked at kiosk near the Major Sales Department. Barna and McClain sometimes had overlapping shifts and would communicate via text message about matters involving DirecTV sales in the Major Sales Department.

In November 2019, McClain complained to Andrews and Manager Zamira Rexhepi that Barna called him a "n****r" once in October 2019 and again in November 2019, at which time Barna also accused him of stealing a DirecTV remote because "all black people steal." Dkt. # 39-1, at 51. There were no witnesses to either incident.

Andrews escalated the issue to Ftacek that same day, who in turn called McClain into his office and asked him to provide a written version of his complaint about Barna. In his written statement dated November 10, 2019, McClain recounted the incident where Barna used a racial slur and accused him of stealing the remote. He added that Barna had made racists comments to him in the past.[4] McClain also wrote that Barna told Andrews that he didn't do or say anything wrong. McClain said that was false, because Barna had left him a voicemail apologizing for what he said.

Costco admits that Ftacek declined to listen to a voicemail purporting to be an apology from Barna, and that it did not obtain a written statement from Barna following

---

[4] McClain does not claim he reported the October 2019 incident to Costco when it occurred.

McClain's complaint. However, Ftacek did call Barna's regional manager, Joe Pavone, informed him of the allegations against his employee, and suggested Pavone investigate the incident. Pavone later indicated that after an investigation DirecTV was unable to corroborate McClain's allegations. At that time, Costco did not tell Pavone that any further incidents with Barna would result in Barna being banned from the warehouse. However, Ftacek testified that he talked about it with McClain, and told McClain that if he had any issues with Barna going forward, he should let Ftacek know and Costco would remove Barna from the building.

After McClain reported the Barna issue to Costco and Costco reported it to DirecTV, Barna never spoke to or approached McClain again at the warehouse. McClain did, however, still have to work near Barna until March 2020, when DirecTV temporarily stopped staffing the Bolingbrook warehouse due to the onset of the COVID-19 pandemic.[5]

McClain testified that in November 2019 he requested Ftacek transfer either him or Barna because he was uncomfortable working near Barna, but there is conflicting testimony on the topic of transfer and the timeline is unclear. Costco disputes that McClain told Ftacek that he was uncomfortable working near Barna or that he requested a transfer for himself or Barna because of his discomfort. McClain further stated that after November 2019, he did not discuss a transfer with anyone until August 2020. Ftacek, on the other hand, testified that at some point McClain wanted to transfer to the

---

[5] It is unclear whether Barna returned to work at the Bolingbrook warehouse prior to August 2020.

loss prevention department, but at the time it was first discussed, there were no openings. Ftacek testified that when the Plainfield location was announced, they discussed a transfer to that warehouse. In June 2020, Ftacek asked McClain if he had completed the transfer paperwork.

McClain did not complain about Barna again until August 2020, during a meeting with Wendy Davis, the then-Vice President and Regional Operations Manager. At the August 25, 2020 meeting, McClain reiterated all the previous complaints about his various supervisors and managers in the previous 15 months, including his issues with Rife, Hadad, Vanadia, Rodriguez, McGlynn, and He, as well as his complaints regarding Barna.

With respect to Barna, Davis confirmed with Barna's manager, Pavone, that Ftacek reported the situation to him, and that Pavone investigated Barna. Pavone told Davis that Barna denied making the racial comments. Davis explained to McClain that because there were no other witnesses, the results of the investigation were inconclusive—though that that did not mean they believed Barna over him. Davis did, however, inform Pavone that Barna would not be welcome at any warehouse to which McClain was assigned.

After asking McClain what outcome he desired, Davis offered either to assist in transferring McClain to the Plainfield location, which was closer to McClain's home, or to facilitate meetings with the individuals at the Bolingbrook warehouse to mediate any conflict or perceived conflict with those coworkers. Ultimately, McClain chose to

transfer to the Plainfield warehouse.  This enabled him to move into the loss prevention role he was interested in pursuing and gave him "a fresh start."

In March 2020, McClain filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In a position statement dated May 13, 2020, Costco stated that McClain had not complained about any race harassment.  The company's response was mainly limited to a discussion about McClain's complaints about Rife's treatment of him.  Costco later testified that everything in its position statement was true, and Costco never supplemented its position statement in writing to reflect that McClain *did* complain about racial mistreatment.  However, Costco made Ftacek, Andrews, and front-end manager Rexhepi available for phone interviews.  During those interviews, each witness explained their involvement in the Barna incident, including what McClain reported and the steps they took in response.[6]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  To defeat summary judgment, a nonmovant must produce more than a "mere

---

[6] Costco introduces these facts through the supplemental declarations of Andrews and Ftacek.  McClain objects to the admissibility of the declarations, claiming that these declarations contradict Costco's 30(b)(6) testimony that it did not supplement or amend its position statement.  There is no contradiction; the fact that Costco testified it never amended its position statement does not contradict the fact that the EEOC conducted phone interviews during which Ftacek, Andrews, and Rexhepi discussed McClain's complaints against Barna.  McClain makes a hearsay objection about Andrews's and Ftacek's statements regarding the phone interviews and what the EEOC asked them during the interview.  However, these witnesses can state what they talked about during their interviews.

scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## **DISCUSSION**[7]

An employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). To prevail on his hostile work environment claims, McClain must demonstrate four elements: (1) that he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working

---

[7] Because Illinois courts apply the federal Title VII framework to IHRA claims, we address both hostile work environment claims together. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016).

14

environment; and (4) there is a basis for employer liability. *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019).

## I. Hostile Work Environment

Several considerations play into whether an environment is hostile: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander*, 739 F.3d at 982 (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691–92 (7th Cir. 2005)). A workplace "need not be hellish to constitute a hostile work environment." *Jackson v. Cnty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007); *see also Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631, 637 (7th Cir. 2019) ("While a 'hellish' workplace is surely actionable, plaintiffs' evidence need not show a descent into the Inferno."). What matters is whether the conduct became so severe or pervasive that "a reasonable person would find [it] hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

Most of the incidents about which McClain complains are not actionable under Title VII. "Title VII imposes no 'general civility code,'" and comments that "may have made for a crude or unpleasant workplace" are not actionable unless they are connected to a protected class. *Smith*, 936 F.3d at 560–61 (directing profanity at plaintiff, calling him a "stupid dumb motherf[ ]," and threatening to "kick [his] ass" did not violate Title VII because it was not connected to his race) (citations omitted); *see also Nicholson v. Allstate Ins. Co.*, 495 F. App'x 716, 719 (7th Cir. 2012) ("These allegations, if true,

suggest minor, isolated conduct not based on [the plaintiff's] race, age, or sex, and thus do not constitute harassment."). Nearly all of the incidents McClain complains about fall in this category.

For example, McClain complains that Vanadia asked if he knew how to read, McGlynn called him an idiot, and Hadad called him a bad person. McClain also complains that He falsely accused him of engaging in idle chatter, hit him on the shoulder with the employee handbook, and grabbed his shoulder a week later. And finally, McClain complains that Rife used "fighting, violent, and demeaning words" against him, and was not subjected to the same level of discipline for such conduct. Dkt. # 37, at 12.

Having supervisors who are "'short tempered,' 'hostile,' unfairly critical, and disrespectful" does not amount to "objectively offensive, severe, or pervasive" conduct. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018); *see also Wilson v. Hisp. Hous. Dev. Corp.*, 2021 WL 2012239, at *9 (N.D. Ill. 2021) ("Title VII doesn't recognize a cause of action for having a bad boss."). McClain does not allege that any of these incidents (taken together or considered individually), unreasonably interfered with his work performance. Taken together, McClain's complaints about his supervisors and managers do not plausibly amount to a working environment "permeated with discriminatory intimidation, ridicule, and insult" to support a hostile working environment claim. *Harris*, 510 U.S. at 21.

Moreover, McClain has not put forth any evidence from which a reasonable jury could conclude that any of these incidents were racially motivated. "To support a hostile work environment claim, the plaintiff need not show that the complained-of conduct was explicitly racial, but must show it had a racial character or purpose." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). "Although a connection between the harassment and the plaintiff's protected class need not be explicit, there must be *some* connection, for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022) (cleaned up); *see also Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (affirming summary judgment where the plaintiff asserted that racial hostility was the impetus underlying the harassing conduct, "but his sole basis for doing so is that he is African-American. The 'harassment' of which [the plaintiff] complains could just as readily have been perpetrated upon a white person without any alteration in its character or purpose.").

Here, McClain has not shown such a connection; he only speculates. As the nonmoving party, McClain is entitled to all reasonable inferences in his favor, but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)); *see also See Rand v. CF Indus., Inc.*, 42 F.3d 1139,

1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and discrimination law would be unmanageable if disgruntled employees could defeat summary judgment by affidavits speculating about the defendant's motives.") (cleaned up).

McClain describes two incidents, however, that plainly constitute race-based harassment: Kyle Barna, a DirecTV employee working at the Bolingbrook warehouse, called McClain a "n****r" on two separate occasions and accused McClain of stealing a remote because "all black people steal." Dkt. # 39-1, at 51. "It goes without saying that the N-word is an egregious racial epithet." *Scaife v. VA*, 49 F.4th 1109, 1116 (7th Cir. 2022); *see also Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) ("[W]hile there is no 'magic number of slurs' that indicates a hostile work environment, an 'unambiguously racial epithet falls on the more severe end of the spectrum.'" (citation omitted)). "That said, [McClain] can't win simply by proving that the word was uttered." *Smith*, 936 F.3d at 561. He must also demonstrate that Barna's use of this word altered the conditions of his employment and created a hostile or abusive working environment. *Id.* (citing *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015)). And he must make this showing "from both a subjective and an objective point of view." *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018).

In cases such as this one, the distinction between whether it was a co-worker as opposed to a supervisor who uttered the racially offensive language is critical. *See*

18

*Gates*, 916 F.3d at 638 ("We have repeatedly treated a supervisor's use of racially toxic language in the workplace as much more serious than a co-worker's."). Given that Barna was not a co-worker, much less a supervisor, his two-time use of the N-word is more likely to be insufficient as a matter of law to show severe or pervasive conduct. *See id.* at 640 ("If the only evidence of racial harassment Gates had was a *co-worker's* use of the three epithets uttered by Rivera, we would likely reach a different conclusion in this case."). In any event, assuming without deciding a hostile work environment existed, McClain cannot prevail on his claims because there is no basis for employer liability.

## II.    Employer Liability

In Title VII cases, liability is direct rather than derivative. *Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005). "An employer may be strictly liable for harassment by supervisors, but a negligence standard applies for harassment by coworkers." *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 568 (7th Cir. 2012). To hold an employer liable for harassment by a coworker—or, in this case, a third party like Barna—a plaintiff must show the employer "was negligent in either discovering or remedying the harassment." *Id.* at 569. Once an employer is aware of the harassment, "it can avoid liability by taking 'prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Id.* (quoting *Vance v. Ball State Univ.*, 646 F.3d 461, 471 (7th Cir. 2011)). "[P]rompt investigation is the hallmark of corrective action," *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010)

(citation omitted), and "success or failure stopping the harassment does not determine whether an employer is liable," *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013). "In assessing the corrective action, our focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 637 (7th Cir. 2009).

McClain first complains Costco should be judicially estopped from arguing that it conducted a reasonable investigation following McClain's complaints because Costco stated multiple times in its written position statement to the EEOC that McClain never complained of harassment based on race, and now, at summary judgment, Costco admits McClain *did* complain about harassment based on race but argues it is not liable because its investigation was reasonable. In response, Costco argues that, even though it did not amend its written statement, it made witnesses available for telephone interviews who spoke about McClain's complaints against Barna and their involvement and actions taken in response.

We need not delve into the judicial estoppel issue[8], however, because the undisputed facts are these: McClain complained about Barna to Andrews. Andrews

---

[8] Even if we did, we are not convinced that judicial estoppel is applicable in this case. The principle of judicial estoppel states that "a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a later proceeding." *Adkins v. VIM Recycling, Inc.,* 644 F.3d 483, 495 (7th Cir. 2011). Judicial estoppel requires that the later position must be clearly inconsistent with the earlier position, and the party to be estopped must have convinced the first court to adopt its position. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523,527 (7th Cir. 1999). True, Costco repeatedly stated throughout its written position statement that McClain never complained about race harassment. But the fact that Andrews and Ftacek then talked about Barna during their EEOC interviews means that Costco

escalated the issue to Ftacek that same day.  Ftacek met with McClain and asked him to provide a written statement.  From McClain's written statement, it is apparent that Andrews also spoke to Barna, who denied McClain's allegations even though he left a voicemail apologizing to McClain.  Costco had no ability to discipline Barna, so it did the next best thing: contacted Barna's supervisor and reported McClain's allegations.  After that, Barna never spoke to or interacted with McClain again.

The fact that Costco did not ban Barna from the warehouse until August 2020 does not mean its response to McClain's complaints was unreasonable.  Even accepting McClain's version of events as true—that he told Ftacek in November 2019 that he was uncomfortable working near Barna and requested that either he or Barna be transferred—the undisputed fact remains that there were no further incidents with Barna.  McClain also does not dispute that he did not complain to Costco about Barna again until August 2020[9], at which time Costco followed up with Barna's supervisor, informed him that Barna was no longer welcome in the warehouse, and worked to facilitate a transfer for McClain.

McClain may believe that Costco should have banned or transferred Barna immediately, but his contention that Costco could or should have done more does not

---

admitted to the EEOC that there was a complaint; the EEOC did not merely accept as true Costco's written statement that McClain never complained about race harassment.

[9] Barna stopped working at the Bolingbrook store after March of 2020 because DirectTV temporarily stopped staffing Costco's Bolingbrook store due to the onset of the COVID-19 pandemic.

establish a genuine factual dispute regarding its liability. *See Beal v. Pac. Rail Servs.*, 647 F. Supp. 3d 636, 641 (N.D. Ill. 2022) ("Beal states that Whalen's conduct and continued presence in the rail yard caused him to feel unsafe, but he offers no viable explanation of how a reasonable jury could find that Pacific Rail's actions were negligent or unreasonable given that Beal had no further confrontations with Whalen or Wilkie.").

"[T]he question as to whether an employer's response was reasonably likely to end the harassment is fact specific and must be analyzed according to a totality of the circumstances review." *Johnson*, 892 F.3d at 908. Considering the totality of the circumstances, McClain has not come forth with any evidence from which a reasonable jury could conclude that Costco exhibited any negligence in the discovery or remediation of the complained-of harassment. The absence of further harassment combined with Costco's prompt response and investigation[10] reflects that Costco's actions were reasonably likely to prevent future harassment.

In sum, even if McClain did prove that his working environment was hostile, his has failed to present evidence that would allow a reasonable jury to impute liability to Costco. The Court therefore grants summary judgment in favor of Costco on McClain's Title VII and IHRA hostile work environment claims.

---

[10] McClain argues that the absence of written documentation related to his complaints against Barna as well as against other Costco employees is evidence that Costco's investigation was unreasonable. The fact that Costco could have been more diligent in maintaining records relating to McClain's complaints does not change the undisputed facts showing Costco's actions in response to his complaints were reasonably calculated to prevent future harassment.

## **CONCLUSION**

For the foregoing reasons, Costco's motion for summary judgment [33] is granted. Judgment is entered in favor of Costco on McClain's hostile work environment claims. Civil case terminated.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: March 15, 2024